## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BRET BINDER.,** | : | |
| *Plaintiff,* | : | **CIVIL ACTION** |
| v. | : | |
| | : | |
| **WESTSTAR MORTGAGE, INC., et al.** | : | **No. 14-7073** |
| *Defendants* | : | |


# M E M O R A N D U M

PRATTER, J.                                                                    JULY 13, 2016

Bret Binder challenges the issuer, owners and servicers of a mortgage on his home, alleging these defendants violated several federal and state consumer protection statutes as well as committed breach of contract, breach of fiduciary duty, negligence and fraud. LoanCare LLC, WestStar Mortgage, Inc., Fannie Mae, and the J.G. Wentworth Company have moved to dismiss Mr. Binder's claims.  Following the oral argument on the motions, the parties submitted a joint report reflecting their stipulation for the dismissal of certain claims and further outlining the contested claims for which the defendants still seek dismissal.

For the reasons outlined below, the Court will grant the motions in part and deny them in part.

## I.   BACKGROUND[1]

The claims at issue in this case emanate from a May 24, 2012 Mortgage and Promissory Note executed by Mr. Binder and WestStar Mortgage to refinance the mortgage on Mr. Binder's home.  The principal balance on the promissory note at the time of mortgage agreement was $417,000.  In addition, the balance on the escrow account being held on Mr. Binder's behalf in

---

[1] The factual background outlined below is drawn from the Plaintiff's Amended Complaint as well as the exhibits attached to that amended complaint and filed on the docket.  "To decide a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

order to pay future tax and insurance payments on the property was $6,227.28.  After entering into the mortgage agreement, Mr. Binder alleges that he made each of his monthly payments on time and in full.

In July 2012, Mr. Binder's mortgage was sold to Fannie Mae.  At the same time, responsibility for servicing the mortgage transferred from WestStar to LoanCare.  A year later, responsibility for servicing the mortgage was transferred back to WestStar.  And then, in July 2015, Mr. Binder alleges that he was notified that responsibility for servicing the loan had again been transferred, this time to J.G. Wentworth Home Lending LLC.

At the point when the mortgage was initially executed, Mr. Binder alleges that WestStar was statutorily obligated to provide him with disclosures regarding a consumer's rights to rescind the transaction under certain circumstances.  No such disclosures were provided.  When the defendants subsequently obtained force-placed insurance, Mr. Binder alleges that this constituted a separate credit transaction for which the defendants were obligated by statute to provide him with additional disclosures.  Again, Mr. Binder alleges that no such disclosures were provided.

Mr. Binder claims that starting in June 2012, shortly after the mortgage and note were executed, he began to notice that his account statements were riddled with errors.  These included errors as to the beginning and ending balance of the mortgage, payment amounts due, payments received and charges imposed. In total, he alleges 288 errors on the monthly statements prepared by the defendants between July 1, 2012 and September 1, 2015.  Mr. Binder alleges that he made numerous attempts during that time to contact the defendants in order to correct the errors, but the defendants failed to make an adequate or timely response to these inquiries.  He also alleges that the defendants made errors with regards to his escrow account, such as misapplying his payments to the accounts, failing to make required tax and insurance

2

payments, and force-placing insurance—all of which resulted, he claims, in unnecessary overcharges.  Mr. Binder also alleges that the defendants unlawfully increased the amount of his required escrow payment.

## II.    STANDARD OF REVIEW

All four defendants have moved pursuant to Federal Rule of Evidence 12(b)(6) to dismiss the Amended Complaint, contending that it fails to state a claim upon which relief can be granted.  "Under Rule 12(b)(6), a motion to dismiss may be granted only if, accepting the well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court concludes that those allegations 'could not raise a claim of entitlement to relief.'" *Simon v. FIA Card Servs., N.A.*, 732 F.3d 259, 264 (3d Cir. 2013) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007)). In evaluating the merits of the defendants' motions to dismiss the Amended Complaint, the Court is looking for "something more than a mere possibility of the claim as alleged"; the plaintiff must have alleged in his Amended Complaint "enough facts to state a claim to relief that is plausible on its face." *See Alston v. Wenerowicz*, No. 14-2691, 2016 WL 878305, at *1 (E.D. Pa. Mar. 7, 2016) (citing *Twombly*, 550 U.S. at 570); *accord McAndrew v. Deutsche Bank Nat. Trust Co.*, 977 F. Supp. 2d 440, 444 (M.D. Pa. 2013) ("Moreover, the plaintiff must allege facts that 'justify moving the case beyond the pleadings to the next stage of litigation.'") (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008)).  While the Court is bound to accept all allegations in the Amended Complaint as true and draw all reasonable inferences in favor of the plaintiff in determining whether the motion should be granted, the Court is not obligated to accept as true "naked assertions" or conclusions as to the requirements of the law when couched as factual assertions in the Amended Complaint. *See Alston*, 2016 WL 878305, at *1 (citing *Twombly*, 550 U.S. at 555 (2007)); *Ciferni v. Boilermakers Local 13*, No. 15-4807, 2016 WL 304794, at *2 (E.D. Pa. Jan. 26, 2016).

### III.    ANALYSIS

The defendants have filed two separate motions to dismiss.  Defendants LoanCare and Fannie Mae filed one motion to dismiss the claims in their entirety, in which WestStar and J.G. Wentworth joined.  *See* Doc. No. 39 (hereinafter "LoanCare Br. at __").   In addition to presenting arguments challenging the adequacy of the pleadings or legal basis of all ten counts in the Amended Complaint, LoanCare and Fannie Mae also argue that the Amended Complaint fails to adequately distinguish which defendants were responsible for which alleged conduct. Fannie Mae argues that the claims against it specifically fail because Mr. Binder did not provide notice and opportunity to cure deficiencies, as required under the mortgage agreement.

While joining in this motion, WestStar and J.G. Wentworth also have filed a separate motion to dismiss the Amended Complaint in part.  *See* Doc. No. 38 (hereinafter "WestStar Br. at __.").  This motion argues that damages under the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 *et seq*., ("RESPA") should be capped, the Truth In Lending Act, 15 U.S.C. § 1601 *et seq*., ("TILA") claims are time barred, the plaintiff fails to state a claim for breach of contract, punitive damages are not available, and the claims against J.G. Wentworth should be dismissed. For their part, LoanCare and Fannie Mae also join in WestStar/Wentworth's motion.

Mr. Binder has responded to these motions in a single filing.  Certainly, a number of the issues raised in the motions overlap.  Consequently, the Court will proceed to address the issues raised in both motions together.

<u>**Motion to Dismiss Claims Against Fannie Mae**</u>

The first argument raised in the Fannie Mae/LoanCare Motion relates to the specificity of the factual allegations against Fannie Mae.  In general, the defendants argue that the Amended Complaint makes blanket allegations as to the liability of all the defendants without identifying which defendants were responsible for which conduct.  In particular, the defendants point to the

dearth of allegations referencing any conduct by Fannie Mae specifically.  Despite spanning 33 pages and 193 paragraphs, the Amended Complaint expressly refers to Fannie Mae only four times.  The only substantive factual allegation regarding Fannie Mae is that WestStar sold the mortgage to Fannie Mae on July 19, 2015. *See* Am. Compl. at ¶¶ 54, 58.  The defendants contend that this blanket pleading is insufficient to state a claim against Fannie Mae, and that the factual allegation of the sale is not actionable in and of itself.

"Under Rule 8, Fed. R. Civ. P., pleadings are to be liberally construed, and a pleading which gives notice to the defendant of the allegations made against him and the grounds upon which they are based is generally sufficient." *Palladino ex rel. U.S. v. VNA of S. New Jersey, Inc.*, 68 F. Supp. 2d 455, 475 (D.N.J. 1999) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957); *Barnhart v. Compugraphic Corporation*, 936 F.2d 131, 135 n.7 (3d Cir.1991)).  Nevertheless, "[e]ven under the most liberal notice pleading requirements of Rule 8(a), a plaintiff must differentiate between defendants." *Shaw v. Hous. Auth. of Camden,* No. 11-4291, 2012 WL 3283402, at *2 (D.N.J. Aug. 10, 2012); *Agresta v. City of Philadelphia*, 694 F. Supp. 117, 121 (E.D. Pa. 1988) (citing *Negrich v. Hohn*, 379 F.2d 213 (3d Cir.1967)).  An allegation against multiple defendants that is bereft of specific wrongdoing by those proposed defendants is insufficient to state a claim.  *See Schiano v. MBNA*, No. 05-1771, 2013 WL 2452681, at *20 (D.N.J. Feb. 11, 2013) (unpublished magistrate judge opinion), *aff'd,* No. 05-1771, 2013 WL 2455933 (D.N.J. June 3, 2013)).  "Typically, a plaintiff cannot sue multiple defendants for fraud merely by alleging fraud with particularity as to one defendant."  *Indianapolis Life Ins. Co. v. Hentz*, No. 06- 2152, 2008 WL 4453223, at *11 (M.D. Pa. Sept. 30, 2008).

The defendants are correct that Mr. Binder's pleadings fail to specify the wrongful conduct for which Fannie Mae is allegedly responsible.  Fannie Mae did not generate or service the mortgage.  The only allegation in the Amended Complaint regarding Fannie Mae is that

Fannie Mae purchased the mortgage in July 2015.  An assignee of a mortgage, however, is not liable for the fraud or statutory violations of the assignor.  *See Christopher v. First Mut. Corp.*, No. 05-01149, 2006 WL 166566, at *4 (E.D. Pa. Jan. 20, 2006); *McMaster v. CIT Grp./Consumer Fin. Inc.*, No. 04-339, 2006 WL 1314379, at *11 (E.D. Pa. May 11, 2006).  In *Christopher,* the plaintiff filed a complaint against a mortgage lender, a mortgage broker, and the assignee of the plaintiff's mortgage, Associates Financial Services Corp., alleging violations of federal consumer protection statutes as well as state law claims.  As to both the Pennsylvania Unfair Trade Practices and Consumer Protection Act, 73 P.S. § 201-1 *et seq*., ("UTPCPL") and RESPA claims, the court in *Christopher* noted that the complaint failed to state a claim as to Associates because the complaint lacked any allegation that Associates made any misrepresentations or had any involvement in wrongfully inducing the plaintiff to enter into the subject loans.  *Id.*  An analogous factual circumstance was present in *McMaster*—albeit one analyzed in the context of a motion for summary judgment.  There, the court held that the plaintiff had "not attributed any specific acts of wrongdoing, or any unfair trade practices, to U.S. Bank. *McMaster*, 2006 WL 1314379, at *11.  While U.S. Bank was the holder of the mortgage, it could not be held liable under UTPCPL because the plaintiff had not offered any evidence to show that U.S. Bank was a culpable party.  *Id.*  The analyses in these cases are applicable here.

Mr. Binder makes no attempt to identify allegations relevant to his claims against Fannie Mae.  Rather, he resorts to the argument that "it would be premature to dismiss Binder's claims against Fannie Mae right now, as questions of fact remain regarding Fannie Mae's own liability and its vicarious liability for the actions of its loan servicers, *which may be determined* during the course of discovery." Pl. Resp. at 17 (emphasis added). Attempting to defeat a Rule 12(b)(6) motion on such speculation is insufficient—"the mere metaphysical possibility that some

plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007)). Having thoroughly reviewed the pleadings themselves, the Court is unable to discern any allegations regarding Fannie Mae's direct or vicarious liability for the conduct of either the originator or servicers of the mortgage, distinct from the claims against the defendants collectively.  This amended complaint fails to allege the specific wrongdoing for which Fannie Mae is liable, and, consequently, the Court declines to find that Mr. Binder's pleadings as to Fannie Mae satisfy even a relaxed pleading standard.  *See Pietrangelo v. NUI Corp.*, No. 04-3223, 2005 WL 1703200, at \*10 (D.N.J. July 20, 2005) ("[T]he Complaint fails to satisfy even the liberal notice pleading standard of Rule 8(a) because Plaintiff fails to differentiate between the defendants."). Therefore, the Court will grant the defendants' motions in part and dismiss without prejudice the claims to the extent they are asserted against Fannie Mae, with the one exception of the contract claims, discussed further below.  Mr. Binder will be permitted to consider filing a second amended complaint, provided he does so in a timely fashion, as addressed in the accompanying Order.

## Motion to Dismiss J.G. Wentworth Company

The WestStar/J.G. Wentworth defendants also assert that the J.G. Wentworth Company should be dismissed and that J.G. Wentworth Home Lending LLC should be substituted as the successor in interest of WestStar.  They contend that the only allegation in the Amended Complaint directed at the J.G. Wentworth Company is that the company acquired WestStar Mortgage in 2015 and is the successor in interest to claims against WestStar.  They rely

principally upon a July 30, 2015 letter from WestStar Mortgage, addressed to Binder & Canno, LLC, which was attached to the Amended Complaint.  This letter states:

> We are pleased to inform you of the proposed acquisition of all the issued and outstanding stock of WestStar Mortgage, Inc. ("Company") by The J.G. Wentworth Company (the "Transaction").    Upon consummation of the Transaction, the Company will become an indirect, wholly-owned subsidiary of the J.G. Wentworth Company and will change its name to the J.G. Wentworth Home Lending, Inc.

Ex. M to Am. Compl.

Based upon the allegations and the documents attached to the Amended Complaint, Mr. Binder has failed to state a claim against the J.G. Wentworth Company.    While the documentation suggests that J.G. Wentworth Home Lending, Inc. is the successor of WestStar, no facts are pled regarding actions taken by the J.G. Wentworth Company specifically.  The fact that the J.G. Wentworth Company now owns WestStar Mortgage as an independent, wholly-owned subsidiary is insufficient to state a claim for the company's successor in interest liability.

> The corporate form was created to allow shareholders to invest without incurring personal liability for the acts of the corporation. These principles are equally applicable when the shareholder is, in fact, another corporation, and hence, mere ownership of a subsidiary does not justify the imposition of liability on the parent.

*Pearson v. Component Tech. Corp.*, 247 F.3d 471, 484 (3d Cir. 2001) (citing *United States v. Bestfoods*, 524 U.S. 51, 69 (1998)).   The Court, therefore, grants the motion as to the J.G. Wentworth Company, and will dismiss this defendant with prejudice.

Because it appears, however, that J.G. Wentworth Home Lending LLC is the proper successor in interest to WestStar, the plaintiff will be allowed to file second amended complaint substituting this party if he so chooses, recognizing however that by permitted him to do so does not mean that the Court has determined that a valid claim against the substituted company exists.

## Count I RESPA Claims

The first count in Mr. Binder's complaint alleges defendants WestStar, LoanCare and Fannie Mae[2] violated the Real Estate Settlement Procedures Act.   RESPA "is a consumer protection statute that regulates the real estate settlement process, including servicing of loans and assignment of those loans, and imposes duties on lenders and loan servicers."   *McAndrew v. Deutsche Bank Nat. Trust Co.*, 977 F. Supp. 2d 440, 444 (M.D. Pa. 2013) (citing 12 U.S.C. § 2601).   The statute imposes certain duties on the "servicer" of federally regulated mortgage loans, such as, for example, responding to qualified written requests from borrowers within a specified period of time.   12 U.S.C. § 2605 (West); *see* Am. Compl. at ¶ 27.

### A.  Claims against LoanCare Generally

The defendants argue that the plaintiff's RESPA claims against LoanCare should be dismissed to the extent that they predate July 20, 2012 or extend past August 1, 2013.   Exhibit J to the Amended Complaint consists of a July 26, 2012 letter to Mr. Binder from LoanCare, informing him that the responsibility for servicing his mortgage transferred from WestStar to LoanCare "effective 07-20-12".   The Amended Complaint itself sets the transfer date two days

---

[2] Even if the Court had not found that Mr. Binder failed to satisfy the notice pleading standards with regards to Fannie Mae generally, dismissal of the RESPA counts as to Fannie Mae would nevertheless be warranted. The defendants argue that Mr. Binder failed to plead that Fannie Mae was a "servicer," liable under RESPA. RESPA defines "servicer" as "the person responsible for servicing of a loan (including the person who makes or holds a loan if such person also services the loan)."   *McAndrew*, 977 F. Supp. 2d at 445 (citing 12 U.S.C. § 2605(i)(2)-(3)); *accord Jones v. ABN Amro Mortgage Grp., Inc.*, 606 F.3d 119, 124 (3d Cir. 2010) (dismissing RESPA claims against non-servicer defendant); *Wenglicki v. Tribeca Lending Corp.*, No. 07-4522, 2009 WL 2195221, at *4 (E.D. Pa. July 22, 2009) (dismissing RESPA claims against the owner of a loan when the complaint affirmatively pled that a separate defendant was responsible for servicing the mortgage in question). The Amended Complaint fails to allege that Fannie Mae was, at any time, the servicer of the loan in question. Mr. Binder simply claims that "WestStar sold Binder's mortgage to Fannie Mae effective on or about July 19, 2012." Am. Compl. at ¶ 13. The July 31, 2012 correspondence, attached to the Amended Complaint as Exhibit K, expressly states that "Fannie Mae does not service your loan" and identifies the servicer as "WestStar Mortgage, Inc."

The plaintiff fails to identify any authority in favor of denying the defendants' motion as to the RESPA claims asserted against Fannie Mae. Mr. Binder simply contends that it would be "premature" to dismiss the RESPA claims against Fannie Mae and speculates that in the course of discovery, evidence may be uncovered tending to prove that Fannie Mae is liable under the statute. It is precisely this type of speculative pleading the Supreme Court found impermissible in *Twomby. See Buoniconti v. City of Philadelphia*, No. 15-3787, 2015 WL 8007438, at *3 (E.D. Pa. Dec. 7, 2015) ("To withstand a motion to dismiss, the complaint's '[f]actual allegations must be enough to raise a right to relief above the speculative level.'") (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Consequently, the RESPA claims against Fannie Mae are dismissed on this basis as well.

later, stating that on "[o]n July 22, 2012 . . . WestStar sold the Mortgage to Fannie Mae, while LoanCare had become the new servicer of the Note." Am. Compl. at ¶ 54. Regardless, Mr. Binder has pled that LoanCare was not the servicer of the Mortgage prior to July 20, 2012. The plaintiff also has stated in his Amended Complaint that "[a]fterwards, the ownership and servicing of Binder's loan was again transferred from LoanCare back to WestStar." Am. Compl. at ¶ 73. The Amended Complaint itself does not plead a specific date when LoanCare transferred responsibility for servicing the loan to WestStar, but in an October 2, 2013 letter from the plaintiff to WestStar, which has been attached to the Amended Complaint at Exhibit D, Mr. Binder states that it is his understanding that a "new loan servicer was appointed" in August of 2013.

Ultimately, the Court finds the pleadings suggest that LoanCare was the servicer of his mortgage only from July 20, 2012 to August 31, 2013. Consequently, the RESPA claims against LoanCare are limited to that period. *See Jones*, 606 F.3d at 124.

### B. Qualified Written Requests

The defendants next argue that Mr. Binder has failed to state a claim under RESPA that the defendants did not adequately respond to the plaintiff's qualified written requests ("QWRs"), as required by the statute.

> RESPA was enacted, in part, to ensure 'that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by abusive practices that have developed in some areas of the country.' It provides that borrowers may inquire about federally related mortgages by making a 'qualified written request.'

*Wilson v. Bank of Am., N.A.*, 48 F. Supp. 3d 787, 798 (E.D. Pa. 2014) (citations omitted). Pursuant to the statute,

> [i]f any servicer of a federally related mortgage loan receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan, the servicer shall provide a written

> response acknowledging receipt of the correspondence within 5 days (excluding legal public holidays, Saturdays, and Sundays) unless the action requested is taken within such period.

12 U.S.C.A. § 2605(e)(1)(A) (West).  Upon receipt of a QWR, certain obligations are triggered at the loan servicer, including the obligation to, within 30 days of receipt, make appropriate corrections to the borrower's account, conduct an investigation and provide the borrower with a written explanation of the reasons the account has been corrected or why any relevant requested information is unavailable. *See* 12 U.S.C. § 2605(e)(2).

In order for correspondence to be considered a QWR, however, there are certain requirements, set out in the statute, which must be met.  The statute requires that a QWR include enough information to allow the servicer to identify the name and account of the borrower as well as provide "a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower."  12 U.S.C. § 2605(e)(1)(B)(ii).

In addition, the regulations implementing RESPA set out guidance for how mortgage services must comply with requests from borrowers to resolve errors with their accounts. *See* 12 C.F.R. § 1024.35.[3]  Under the regulations, "the servicer may, by written notice provided to a borrower, establish an address that a borrower *must* use to submit a notice of error in accordance with the procedures in this section.  12 C.F.R. § 1024.35(c) (emphasis added).

---

[3] While the statute itself does not prescribe the obligation for a borrower to send correspondence to any specific address, the statute does empower the Bureau of Consumer Financial Protection to "prescribe such rules and regulations, to make such interpretations, and to grant such reasonable exemptions for classes of transactions, as may be necessary to achieve the purposes of this chapter." 12 U.S.C. § 2617 (West).  Initially, Regulation X was promulgated under the authority of the Department of Housing and Urban Development.  As part of the Dodd-Frank Act, on July 16, 2014, the authority to promulgate regulations under the statute was transferred to the Bureau of Consumer Financial Protection. *See Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1148 (10th Cir. 2013); *Hittle v. Residential Funding Corp.*, No. 2:13-CV-353, 2014 WL 3845802, at *6 n.6 (S.D. Ohio Aug. 5, 2014) (citing Removal of Regulations Transferred to the Consumer Financial Protection Bureau, 79 Fed. Reg. 34,224 (effective July 16, 2014)).

In the Amended Complaint, Mr. Binder alleges correspondence sent to both WestStar and LoanCare constituted QWRs and triggered the defendants' statutory response obligation. Under RESPA, there cannot be more than one servicer of a loan at any given time. *McAndrew v. Deutsche Bank Nat. Trust Co.*, 977 F. Supp. 2d 440, 445 (M.D. Pa. 2013) ("RESPA states, however, that only one (1) entity may act as the loan servicer for purposes of a section 2605(e) violation. Thus, where one entity is acting as the servicer of a mortgage loan, a separate entity cannot also act as the servicer.") (citing *Lingad v. Indymac Fed. Bank*, 682 F. Supp. 2d 1142, 1151 (E.D. Cal. 2010)). Consequently, LoanCare cannot be liable under RESPA as a servicer after WestStar took over responsibility for servicing the loan in August 2013, and, conversely, WestStar could not be liable for servicing the loan between July 2012 and August 2013. The majority of the alleged QWRs cover the time period when LoanCare was servicing the mortgage. One question, however, relates to the time period after LoanCare had relinquished control of servicing the loan to WestStar in the fall of 2013. Because these two groups of correspondence raise separate issues, the Court will deal with them in turn.

### i. LoanCare Correspondence

The defendants' first argument relates to alleged QWRs sent to LoanCare. The defendants assert that Mr. Binder's RESPA claim as to these letters fails because he has not alleged that he sent his purported QWRs to the address designated by the defendants to receive such correspondence. Two of the plaintiff's monthly mortgage statements are attached to the Amended Complaint at Exhibit C. The copies attached to the Amended Complaint only provide the one side of a two-sided document. The defendants, however, attached the complete documents to the LoanCare/Fannie Mae Motion at Exhibits 2 and 3.[4] The mortgage statements

---

[4] The defendants note in the motion to dismiss that while the plaintiff has attached copies of the 9/10/12 and 2/19/13 account statements to his Amended Complaint, he has failed to attach the entirety of these statements—most notably the "back" of the statements, which designate the address where Qualified Written Requests must be sent.

state that QWRs are to be sent to "P.O. Box 8068 Virginia Beach, VA 23450, Fax 757-466-2822, Attn. Customer Service Escalation." Given this, the Court finds that the defendants had designated a specific address to received qualified written requests, under the statute and regulations. Therefore, under Regulation X, in order for the defendants' obligation to respond to a QWR to be triggered, Mr. Binder must show that he sent his requests to the defendant as directed.

In the Amended Complaint, Mr. Binder alleges that he sent LoanCare eleven separate requests during the eight months between September 28, 2012 and May 28, 2013,[5] which constituted QWRs. *See* Am. Compl. at ¶ 31. He has attached copies of this correspondence to his Amended Complaint at Exhibit D. A review of this correspondence, however, shows that with three exceptions, all of the plaintiff's requests took the form of email correspondence sent to the defendants' customer service email address. With regards to these emails, the Court finds that they do not constitute QWRs under RESPA because they were not sent to the address designated by LoanCare. Given that they were not QWRs under the statute, as a matter of law, LoanCare is not liable for failing to respond to them.

In addition to these emails, Mr. Binder has attached three letters sent to LoanCare which he also alleges constitute QWRs. These also fail to give rise to a claim under RESPA for similar reasons. None of these letters were directed to "Customer Service Escalation" at LoanCare as directed by the defendant. Rather, these letters were sent attention "LoanCare Legal Dep't."

---

Typically, when considering a motion to dismiss, "it is the usual practice for a court to consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *See Grp. Against Smog & Pollution, Inc. v. Shenango Inc.*, 810 F.3d 116, 127 (3d Cir. 2016). Courts may, however, "consider exhibits attached to a defendant's motion to dismiss if it is 'an undisputedly authentic document' and 'plaintiff's claims are based on the document.'" *Id.* Here, the Court finds that the Monthly Mortgage Statements attached to the defendants' motion can properly be considered on this motion to dismiss because they are simply complete versions of documents attached to the Amended Complaint, the plaintiff has not dispute their authenticity, and the plaintiff's claims are, in part, based upon these documents.

[5] The plaintiff alleges a 12th QWR that was sent to WestStar on October 2, 2013, after LoanCare transferred responsibility for servicing the loan. Neither the briefing nor the pleading identifies an address at WestStar designated to receive QWRs. The Court will discuss whether this correspondence meets the statutory requirements in order to qualify as a QWR *infra*.

Given that Mr. Binder failed to send his request to the proper address designated by the defendant to receive such QWRs, the Court finds that this correspondence does not comply with the regulation.

The plaintiff does not dispute that his correspondence was not sent to the address and attention designated by the defendants, but rather asserts that, regardless of who he sent his requests to, the defendants actually received them.  Such receipt, argues Mr. Binder, triggered LoanCare's obligation to respond. Mr. Binder cites to *Benner v. Bank of America, NA*, 917 F. Supp. 2d 338 (E.D. Pa. 2013) and *McMillen v. Resurgent Capital Servs., L.P.*, No. 13-00738, 2015 WL 5308236, at *1 (S.D. Ohio Sept. 11, 2015)(unpublished magistrate judge opinion) in support of this argument.

Both *Benner* and *McMillen* emphasize that the language of the statute itself does not mandate that correspondence be received at a specific address in order to trigger obligations under the statute. In both of these cases it was undisputed that the defendants did, in fact, receive the relevant correspondence.  Those courts reason that the statute is remedial in nature and should be construed broadly with a focus on the servicer's receipt of the borrower's QWR, rather than the required procedure.  *McMillen*, 2015 WL 5308236, at *7 (*citing Benner*, 917 F. Supp. 2d at 364-65).  As noted in *McMillen*, however, the majority of courts which have analyzed this issue have disagreed with the reasoning articulated in *Benner*.

The leading case in which a federal court reached a different conclusion is *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141 (10th Cir. 2013).  The Tenth Circuit Court of Appeals reasoned first that the statute does not mandate that servicers have a statutory duty to respond to all inquiries received from borrowers. "RESPA and its implementing regulation envisioned that only certain communications would trigger liability for damages under § 2605, and delineated certain requirements for communications before imposing that liability." *Id.* at 1149 (citing

*Medrano v. Flagstar Bank, FSB*, 704 F.3d 661, 667–68 (9th Cir. 2012)). The court notes, however, that Congress has not defined the requirements for "receipt" of a QWR, and the legislative history provides no useful guidance on how Congress would have interpreted when a QWR is received for purposes of the imposition of statutory duties. *Id.* at 1148. Therefore, because Congress was silent, and because the Consumer Protection Bureau was empowered to "prescribe such rules and regulations, to make such interpretations . . . as may be necessary to achieve the purposes of this chapter," 12 U.S.C. § 2617, the Tenth Circuit Court of Appeals considered, and ultimately adopted, the agency's interpretation of the statute, as reflected in the relevant regulation. The Bureau has interpreted the statute to allow servicers the option of requiring borrowers to submit qualified written requests through a designated address. "Communication failing to meet the requirements of RESPA and its implementing regulation amounts to nothing more than general correspondence between a borrower and servicer," and does not trigger RESPA duties on the part of the servicer. *Id.* at 1149. Allowing servicers to designate such an exclusive address where QWRs would be received and handled does not defeat the intention of RESPA to reform the real estate settlement process and provide consumers "greater and more timely information on the nature and costs of the settlement process." *Id.* at 1148-49.

To be sure, *Brenner* was decided in this district, but before *Berneike,* and it is largely seen as an outlier and minority opinion. *See generally Moody v. CitiMortgage, Inc.*, 32 F. Supp. 3d 869, 873 (W.D. Mich. 2014) (collecting opinions); *In re Patrick*, No. 13-61661, 2014 WL 7338929, at *19 (Bankr. N.D. Ohio Dec. 22, 2014). The reasoning presented in *Berneike* is more compelling and, therefore, the Court holds that the email correspondence sent to the defendants by Mr. Binder was nothing more than general correspondence between borrower and servicer, the receipt of which did not trigger RESPA duties. The Court reaches the same conclusion with

regard to the three physical letters Mr. Binder allegedly sent to the defendants.  While these were addressed to the post office box identified by the defendants for receipt of Qualified Written Requests, none of these letters were sent to the attention of "Customer Service Escalation." Rather, they were sent to the attention of the "LoanCare Legal Dep't."  Regulation X provides the servicer the ability to establish a specific channel for the receipt and processing of QWRs and obligates borrowers comply with the servicer's instructions in order to trigger RESPA's obligations.

Here, Mr. Binder has not alleged that he sent his correspondence to the recipient identified by the defendant.  For the above reasons, the Court finds that the correspondence identified by the plaintiff in Exhibit D to the Amended Complaint and dated September 28, 2012, January 7, 2013, January 18, 2013, January 24, 2013 (both emails), February 7, 2013, February 20, 2013, March 6, 2013, March 20, 2013, April 12, 2013, and May 28, 2013 do not, as a matter of law, constitute Qualified Written Requests under RESPA, obligating a response as set out in the statute.  Consequently, the Court will grant the defendants' motion to dismiss as to Mr. Binder's RESPA claims that these documents constituted QWRs under the statute.

### ii.  WestStar Correspondence

In addition to the 11 documents sent to LoanCare between September 2012 and May 2013, however, Mr. Binder has also alleged that a 12th document, dated October 2, 2013 and addressed to WestStar, constituted a Qualified Written Request.  Unlike the documents sent to LoanCare, however, the exhibits attached to the Amended Complaint fail to identify any address designated by WestStar to receive QWRs.  Because neither the statute, nor the relevant regulations mandate such an address be designated, the Court finds that the plaintiff's allegation that this correspondence was actually received by WestStar is sufficient to state a claim.

As to the substance of the correspondence, the LoanCare/Fannie Mae Motion argues that the October 2, 2013 letter "did not qualify a [sic] customer inquiry or a request for information 'related to the servicing of' a home loan as required by 12 U.S.C. § 2605(e)(1)(A)." Rather, the defendants argue that "[w]ritten communications making a demand for money and threatening to file a lawsuit are not QWRs." The statute, however, does not make any such distinctions; the statute simply requires that a QWR include the name and account of the borrower and "a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error." 12 U.S.C. § 2605(e)(1)(B).

The case cited by the defendants in their brief does not contradict this general principle. *See Taylor v. Nelson*, No. 02-6558, 2006 WL 266052, at *14 (E.D. Pa. Jan. 31, 2006). In *Taylor,* the court simply held that a letter which fails to request any information regarding the servicing of a loan could not trigger a servicer's obligations to investigate and respond in accordance with the statute. Here, while Mr. Binder's October 2, 2013 letter does threaten litigation, in all other respects it complies with the requirements of the statute—the letter identifies Mr. Binder and his account, describes the problem with his account, and requests information.

The defendants contend that, even if the October 2, 2013 correspondence constituted a QWR, the exhibits attached to the plaintiff's Amended Complaint establish that the defendants complied with the duties set out in the statute. Based upon a review of the documents attached to the Amended Complaint, however, there does not appear to be any response from WestStar contained in the record thus far. Consequently, the pleadings do not state that WestStar adequately responded to Mr. Binder's October 2, 2013 QWR. Therefore, the Court denies the defendants' motion as to this component of the Amended Complaint.

### C. Force-Placement of Insurance

The LoanCare/Fannie Mae Motion next argues that Mr. Binder has failed to state a claim under RESPA for the force-placement of insurance. They argue that the section of the statute prohibiting such conduct was not in effect at the time the defendants' alleged force-placement of insurance took place.

The Dodd-Frank Wall Street Reform and Consumer Protection Act, Pl.111-203, 124 Stat. 1376 (July 21, 2010), made a number of changes to RESPA, including the addition of a prohibition against force-placing insurance. Force-placed insurance is hazard insurance coverage obtained by a servicer of a federally regulated mortgage to cover the relevant property when the borrower has failed to maintain or renew the hazard insurance as required under the terms of the mortgage. The Dodd-Frank Act instituted certain protections for borrowers regarding force-placement of insurance. Specifically, the Act amended subpart (k) of § 2605 to prohibit mortgage servicers from

> (A) Obtain[ing] force-placed hazard insurance unless there is a reasonable basis to believe the borrower has failed to comply with the loan contract's requirements to maintain property insurance; (B) charge[ing] fees for responding to valid qualified written requests (as defined in regulations which the Bureau of Consumer Financial Protection shall prescribe) under this section; (C) fail[ing] to take timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties; (D) fail[ing] to respond within 10 business days to a request from a borrower to provide the identity, address, and other relevant contact information about the owner or assignee of the loan; or (E) fail[ing] to comply with any other obligation found by the Bureau of Consumer Financial Protection, by regulation, to be appropriate to carry out the consumer protection purposes of this Act.

Pub.L. 111-203, Title XIV, § 1463, July 21, 2010, 124 Stat. 1376, 2182-83; 12 U.S.C.A. § 2605 (West).

While the Act was passed in 2010, the provisions governing force-placement of insurance did not come into effect until January 10, 2014, when the underlying regulations implementing the statute became effective. *See Berneike*, 708 F.3d at 1146 n.3 ("On January 17, 2013, the

Bureau issued a final rule implementing the Dodd–Frank amendments to RESPA and amending Regulation X, with an effective date of January 10, 2014.”); *Gomez v. Nationstar Mortgage, LLC*, No.14-1499, 2015 WL 966224, at *3 (E.D. Cal. Mar. 4, 2015) (Section 2605(k) took effect on January 10, 2014”); Pub.L. 111-203, Title XIV, § 1400(c), 124 Stat. 1376, 2136-37 (July 21, 2010).  Moreover, courts have held that the provisions of the Dodd-Frank Act are not retroactive. *See McCauley v. Home Loan Inv. Bank*, F.S.B., 710 F.3d 551, 554 n.2 (4th Cir. 2013) (“Congress did not direct such retroactive application in the Dodd–Frank Act”). Therefore, in order to state a claim, the plaintiff must have pled that the defendants force-placed insurance sometime after January 10, 2014.

The plaintiff does not dispute the fact that the provisions of the statute governing force-placement of insurance did not come into effect until 2014, but he contends that this is an issue of fact that cannot be resolved on a motion to dismiss.  *See* Pl. Memo at 14 (“Even assuming for purposes of this motion that is correct, whether Defendants force-placed insurance is a question of fact that can be resolved during discovery.”).  The pleadings, however, do not allege that the defendants force-placed insurance after January 10, 2014.   The Amended Complaint only identifies two instances in which the defendants are alleged to have force-placed insurance improperly.  The first allegedly occurred on August 2, 2012, after the defendants supposedly failed to pay Mr. Binder’s insurance premiums from his escrow account.  *See* Am. Comp. ¶¶ 43, 44.  Mr. Binder also alleges that he received another notice on February 23, 2013 to the effect that his insurance coverage had been canceled and that, subsequently, the defendants again force-placed insurance.  *See* Am. Comp. ¶¶ 47, 48. Both of these events occurred well before the January 10, 2014 effective date of section 2605(k).  Consequently, the Court will grant the defendants’ motion to dismiss the RESPA claims regarding the force-placement of insurance.

### D.  RESPA Private Right of Action[6]

Under the Mortgage Agreement, Mr. Binder alleges that an escrow account was established as security for tax and insurance payments on the property.  Mr. Binder was required to make payments into this account, but the account itself was managed by the defendants.  Mr. Binder alleges that the defendants violated RESPA by (1) mishandling the escrow account (2) increasing in the escrow payments Mr. Binder was required to make, (3) improperly treating payments as late and (4) misrepresenting the amount in the account.

The defendants argue that the statute does not contain a private right of action for these claims.  In his response, Mr. Binder acknowledges that there is no private right of action under the statute for mishandling of the escrow amounts or increasing the escrow amounts and agrees that the Court should grant the defendants' motion as to these components of the RESPA claims.  Section 2609 of RESPA governs escrow fee collection.  "The majority of Circuit Courts of Appeal have determined that a private right of action does not exist for violations of section 2609." *McAndrew v. Deutsche Bank Nat. Trust Co.*, 977 F. Supp. 2d 440, 446 (M.D. Pa. 2013) (citing decisions from the Fifth, Seventh and Eleventh Circuit Courts of Appeals, holding that no private right of action exists under section 2609 of RESPA.); *Allison v. Liberty Sav.*, 695 F.2d 1086, 1087 (7th Cir. 1982) ("[W]e hold that there is no private right of action under § 10 of RESPA.").

Based upon the plaintiff's stipulation that no private right of action exists for mishandling Mr. Binder's escrow account, the Court will only consider the defendants' arguments as to

---

[6] In addition to the arguments regarding the availability of a private right of action under the statute, the defendants also argue that the plaintiff has failed to state a claim under RESPA based upon the defendants' failure to notify Mr. Binder that responsibility for servicing his mortgage had been transferred to LoanCare.  They cite to Exhibit J to the Amended Complaint which indicates that Mr. Binder was notified of the change six days after the transfer, which was within the 15 day statutory period set out in section 2605(c).  In light of this, Mr. Binder admits that Count I should be dismissed to the extent that it is based on the defendants' failure to provide Mr. Binder notice of the servicing transfer.  *See* Pl. Memo at 15; Joint Report of Parties, January 8, 2016.  The Court will therefore grant the defendants' motion as to the notice claims under Count I.

claims of improper handling of payments and misrepresentations on Mr. Binder's account statements, independent of the escrow account.

The plaintiff's Amended Complaint alleges 288 separate mistakes in the plaintiff's account statements. These mistakes include "incorrect beginning and ending interest and principal balances, interest and principal payments, due dates, and late fees due." Am. Compl. at ¶ 97. Mr. Binder argues that RESPA sections 2605, 2607 and 2608 all provide private rights of action, under which he brings his claims to recover for these mistakes. Unfortunately for Mr. Binder, none of these sections appear applicable: section 2605 mandates loan servicers provide borrowers with certain disclosures and respond to borrower inquiries; section 2607 prohibits payment of kickbacks and unearned fees; and section 2608 prohibits using a particular title insurance company as a condition of a mortgage loan. None of these provide a basis for Mr. Binder to pursue claims under RESPA that the defendants made errors on Mr. Binder's monthly statements or charged him inappropriately for late payments

Mr. Binder has failed to identify any statutory basis on which to conclude that he can pursue claims under RESPA based upon the alleged errors in the account statements. The Court has conducted its own review and concluded that no such basis exists. The Court will therefore grant the defendants' motion to dismiss Count I as to RESPA claims based upon the defendants' alleged improper characterization of payments as late and misrepresentation of account statements.

### E. Damages

The final category of arguments presented by the defendants regarding RESPA relate to the damages alleged in the Amended Complaint. The LoanCare/Fannie Mae memo argues generally that Mr. Binder has failed to identify any cognizable damages and that, to the extent he is seeking punitive damages, these are not available under the statute. In addition, the

WestStar/Wentworth Memo also argues that the amount of damages available under the statute should be capped.

### i. Actual Damages

The LoanCare/Fannie Mae Memo first argues that Mr. Binder's RESPA claims must be dismissed because he has failed to allege actual damages. This argument lacks merit.

"A plaintiff claiming a RESPA violation must allege not only a breach of a duty required to be performed under RESPA, but must also show that the breach caused him to suffer damages." *Wilson v. Bank of Am., N.A.*, 48 F. Supp. 3d 787, 799 (E.D. Pa. 2014) (quoting *Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp. 2d 374, 383 (D.N.J. 2006)). "Actual damages encompass compensation for any pecuniary loss including such things as time spent away from employment while preparing correspondence to the loan servicer, and expenses for preparing, photocopying and obtaining certified copies of correspondence." *Id.* (quoting *Cortez v. Keystone Bank, Inc.*, No. 98–2457, 2000 WL 536666, at *12 (E.D. Pa. May 2, 2000)); *accord Benner v. Bank of Am., N.A.*, 917 F. Supp. 2d 338, 364 (E.D. Pa. 2013).

Mr. Binder's Amended Complaint alleges the type of damages specifically referenced by the decisions in *Wilson*, *Benner* and *Cortez*:

> Being forced to spend additional time in attempting to communicate with Defendants, in writing and by phone, to get his account and statements corrected to match payments made (Binder offered time estimates in written communications with WestStar in the attempt to correct problems, including: 4-5 hours by September 28, 2012; 8 hours by January 18, 2013; and 60-70 hours to date through this lawsuit)
> Being forced to spend additional money, including overpaying on his mortgage monthly, postage (including regular or certified mailings on, inter alia, February 20, 2013, April 12, 2013 and May 28, 2013 totaling approximately 10.00), incurring the time of his insurance broker and accountant, printing (including approximately 140 pages of material at an approximate cost of 7-10 cents per page), and the like;

Amended Complaint at ¶ 5.  The Court finds that Mr. Binder has alleged that he suffered actual damages as a result of the defendants' supposed conduct.  Therefore, the Court denies the motion to dismiss as to failure to plead such damages

### ii.  Statutory Damages

WestStar and J.G. Wentworth, in addition to joining in the LoanCare/Fannie Mae motion to dismiss, have filed their own motion seeking to dismiss certain aspects of the Amended Complaint.  The WestStar/Wentworth Memo argues that, as a matter of law, Mr. Binder is not entitled to the $250,000 in statutory damages he claims under RESPA.  The defendants assert that, in addition to any alleged actual damages suffered, the plaintiff may only recover an additional $2,000 in damages if he shows a "pattern or practice of noncompliance with the requirements of the section.  12 U.S.C. § 2605(f)(1).  Mr. Binder counters by arguing that he is entitled to $2,000 in additional damages for *each* violation of the statute.

The statute provides that, should Mr. Binder establish one or more violations, he may be entitled to damages as follows:

(f) Damages and costs

Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:

(1) Individuals

In the case of any action by an individual, an amount equal to the sum of—

(A) any actual damages to the borrower as a result of the failure; and

(B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000.

12 U.S.C. § 2605(f).

The defendants' sole authority in support of their argument that the Court should find Congress intended to impose a blanket $2,000 cap on additional statutory damages is a decision

from the Western District of New York. *See Katz v. The Dime Savings Bank*, 922 F. Supp. 250 (W.D.N.Y. 1997). Here a mortgagor brought suit to enjoin the foreclosure of his mortgage after he defaulted on payments and for violations of RESPA against his servicer. Among other things, the mortgagor sought statutory damages under RESPA. After holding that statutory damages are recoverable, even in the absence of any actual damages as a result of the RESPA violation, the court then went on to consider whether the language of § 2506(f)(1) implies a $2,000 per violation cap, or an overall cap on additional statutory damages which may be imposed if the court finds the defendants' conduct constituted a "pattern or practice of noncompliance." *Id.* at 258. The court identified two key phrases in the statutory language. The first is the requirement that the plaintiff show a "pattern or practice" of noncompliance with the statute in order to impose statutory damages. *Id.* The second key phrase is the allowance of recovery of damages for "each such failure" of the statute. Similar to the parties here, the *Katz* defendants argued the additional damages should be capped at $2,000 *in toto*—regardless of the number of proven instances of statutorily violative behavior. Mr. Binder and the plaintiff in *Katz* both argue that the $2,000 cap constitutes the maximum additional damages that can be applied "for each such failure" or violation of the statute. While the *Katz* decision ultimately withheld judgment pending briefing on whether a court could find a pattern of conduct based only on allegations regarding the defendants' conduct vis-à-vis a single plaintiff, the reasoning laid out in the decision suggests that the statute should not be read to imply $2,000 in statutory damages may be tacked on for each separate violation of the statute. The court stated that "[o]ne would think that if Congress had intended that statutory damages be available for single violations of the Act, it would have not inserted the phrase 'in the case of a pattern or practice of noncompliance.'" *Id.* at 258. The court cites to similar language used in other federal statutes, namely the Telemarkeitng

and Consumer Fraud and Abuse Prevention Act and the Telephone Consumer Protection Act, where the phrase "pattern or practice" is read to imply its "plain meaning." *Id.*

In the defendants' reply briefing, they cite a second decision which adopts the analysis in *Katz. See Ploog v. HomeSide Lending, Inc*., 209 F. Supp. 2d 863, 869 (N.D. Ill. 2002) ("This Court agrees with the analysis in *Katz v. Dime Savings Bank, FSB*, in which the court determined that RESPA intended for individual statutory damages to be capped at $1,000 for proving a pattern or practice of noncompliance and not $1,000 for each instance.").

The Court has independently reviewed the case law and found only a handful of additional cases which address the issue. These cases reach the same conclusion as in *Katz. See Serfass v. CIT Grp./Consumer Fin., Inc.*, No. CIV.A. 8:07-90-WMC, 2008 WL 4200356, at *5 (D.S.C. Sept. 10, 2008) ("Neither the Supreme Court nor any circuit courts have yet addressed the issue, but district courts considering the issue have held that a plaintiff can recover statutory damages no greater than $1,000 by proving a pattern or practice of noncompliance."); *Davis v. Greenpoint Mortgage Funding, Inc.*, No. 09-2719, 2011 WL 7070222, at *5 (N.D. Ga. Sept. 19, 2011) (Noting that "Courts also have authority to award additional or statutory damages not to exceed $1,000 in cases where there is a 'pattern or practice of noncompliance' with Section 2605. 12 U.S.C. § 2605(f) (1)(B)" but ultimately holding that pleadings failed to show a pattern or practice of noncompliance.).

Mr. Binder does not provide any authority contradicting the reasoning offered by *Katz* and its progeny. Rather, he argues that regardless of whether the Court were to accept the analysis applied in *Katz*, his Amended Complaint actually alleges *multiple* patterns or practices, each of which would entitle the plaintiff to separate statutory damages under § 2605(f)(1)(B). However, aside from citing to a number of decisions which generally hold that the existence of a pattern or practice is a question of fact, the determination of which is generally not appropriate

on a motion to dismiss, Mr. Binder provides no explanation as to how his Amended Complaint alleges distinct practices or patterns of behavior.  Moreover, Mr. Binder's argument does not address the question at issue, namely whether statutory damages are capped based upon individual violations of the statute or the entirety of a practice or pattern of behavior.

Ultimately, in light of the rulings on the LoanCare/Fannie Mae Motion, the Court determines that it need not address the question.  Despite Mr. Binder's assertions that he has adequately averred the existence of multiple practices and patterns of conduct by the defendants which violate RESPA, the defendants have successfully argued that much of conduct complained of in the Amended Complaint does not establish liability under the statute.  As laid out above, of the specific conduct referenced in the defendants' briefing, Mr. Binder has only properly alleged a RESPA violation with regards to a single qualified written request, sent to WestStar in October 2013.  Numerous courts have held that a plaintiff cannot properly establish entitlement to additional statutory damages based upon a single violation of the statute. *See e.g. Gorbaty v. Wells Fargo Bank, N.A.,* No. 10-3291, 2012 WL 1372260, at *5-6 (E.D.N.Y. April 18, 2012) (two violations of RESPA insufficient to establish a pattern or practice under § 2506(f)(1)(B)); *McLean v. GMAC Mortg.  Corp.*, 595 F. Supp. 2d 1360, 1365–66 (S.D. Fla. 2009) (finding defendant's insufficient response to two QWRs insufficient to establish "pattern or practice"); *In re Tomasevic*, 273 B.R. 682 (Bankr. M.D. Fla. 2002) (failure to respond to one QWR did not amount to "pattern or practice" under the statute).  Mr. Binder has only properly alleged a single RESPA violation and the Court holds that he has not alleged the existence of a pattern or practice of conduct by the defendants.  Therefore, Mr. Binder is not entitled to statutory damages in addition to his actual damages.

### iii.  Punitive Damages

Finally, the defendants argue that the plaintiff is not entitled to recover punitive damages under RESPA.  Mr. Binder does not dispute this and voluntarily withdraws his claim for punitive damages under the statute.  *See* Pl. Memo at 21.  The Court therefore grants the LoanCare/Fannie Mae Motion as to punitive damages.

### Count II TILA Claims

The LoanCare/Fannie Mae defendants next argue that Mr. Binder's claims under the Truth in Lending Act should be dismissed in their entirety.  They argue that, with regards to all the defendants, the TILA claims are time barred.  They also argue that Mr. Binder's rescission claim under TILA fails because he did not adequately plead his ability or intent to return the loan funds.[7]

The purpose of TILA is "to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices."  15 U.S.C.A. § 1601.  At closing, lenders are required to provide material disclosures to borrowers, including the finance charges associated with the loan.  *See* 12 C.F.R. § 226.4.  When subsequent events result in the lender altering the terms of the loan in a way unauthorized by the mortgage, the lender must provide additional disclosures.  *See* 12 C.F.R. § 226.17(e).

Mr. Binder contends that the defendants collectively violated TILA "by failing to include certain disclosures at the Closing and at other times disclosures were required."  Am. Compl. at ¶ 108.  As noted above, the plaintiff has failed to allege that Fannie Mae committed any specific conduct relevant to the claims.  Consequently, the claims against Fannie Mae are dismissed

---

[7] In addition, the defendants argued that all TILA claims against LoanCare must be dismissed because loan servicers are not subject to liability under the statute. The parties' January 8, 2016 joint report states that Mr. Binder is dismissing all TILA claims against LoanCare.  Consequently, the Court will grant the defendants' motion to dismiss the TILA claims against LoanCare.

without prejudice.  In addition, the plaintiff has expressly withdrawn any TILA claims against LoanCare.  Consequently, the only remaining issues relevant to TILA involve the issuance of the mortgage by WestStar.

With regard to alleged violations by WestStar, the defendants first argue that the TILA claims against WestStar are time-barred.  TILA damages claims carry a one year statute of limitations.  In light of this, Mr. Binder acknowledges in his response to the defendants' motion that he "does not seek damages arising out of Defendants' TILA violations at closing."  Pl. Br. at 25 n.7.  Mr. Binder does, however, argue that his claim for rescission of the agreement survives.

A claim for rescission under TILA does not begin to run until the required disclosures are delivered.

> Under TILA, a borrower has three days from the later of the date of the transaction or the date of delivery of the required TILA disclosures to rescind a financing transaction. 15 U.S.C. § 1635(a). If a creditor fails to deliver the disclosures at all, the right to rescind does not expire until three years after the consummation of the transaction or upon the transfer or sale of the property, whichever occurs earlier. 15 U.S.C. § 1635(f).

*Horan v. Verano*, No. 15-1785, 2015 WL 5460603, at *2 (E.D. Pa. Sept. 15, 2015).  Here, the plaintiff has alleged that he was never provided the proper disclosures at closing.  Consequently, the statute of limitations on the rescission claim would run three years from the date of closure of the mortgage.  WestStar corrected the initial HUD prior to the Closing but failed to provide amended disclosures based on the recalculated amounts. Am. Comp. ¶ 109.

TILA, as a remedial statute, is to be liberally construed in favor of borrowers.  The Court is obliged to accept as true all factual allegations in the Amended Complaint and draw all reasonable inferences from those facts in a light most favorable to the non-moving party, to wit, Mr. Binder.  Accordingly, the motion to dismiss appears inappropriate at this time because Mr. Binder did plead a colorable claim that at closing, the defendants committed a TILA violation in failing to disclose all required material information. *Smith v. Fid Consumer Disc. Co*., 898 F.2d

28

896, 898 (3d. Cir. 1990).  The Court will deny the motions as to the TILA claims related to the closing disclosures.

The remaining TILA claims relate to post-closing conduct by the defendants collectively. These allegations relate to a period of time when the loan was serviced by LoanCare and owned by Fannie Mae.  Mr. Binder has, however, withdrawn his claims against LoanCare and the pleadings fail to identify any relevant actionable conduct by Fannie Mae.  The Court will, therefore, dismiss the remaining TILA claims without prejudice and allow the plaintiff to attempt to present an amended complaint addressing the relevant conduct at issue.

## Count III UTPCPL Claims

The third count in Mr. Binder's Amended Complaint alleges violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law.

### A.  Catch-All Provision § 201-2(4)(xxi)

Mr. Binder alleges that the defendants' "error-filled statements, combined with their willful failure to investigate and/or correct those errors, and failure to respond to Binder's reasonable requests constituted fraudulent or deceptive conduct" for purposes of establishing liability under the statute.  The statute makes "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" unlawful.  73 Pa. Stat. Ann. § 201-3.  The statute provides 21 modes of conduct which constitute "unfair methods of competition" or "unfair or deceptive acts or practices" for purposes of establishing liability under the statute.  73 Pa. Stat. Ann. § 201-2(4).  Mr. Binder alleges that the defendants' conduct constituted "other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding."  *Id* at § 201-2(4)(xxi).

The defendants argue first that Mr. Binder has failed to meet the required pleading standard for establishing fraudulent or deceptive conduct.  Fraud, they contend, must be alleged

with particularity and Mr. Binder's Amended Complaint fails to provide any of the specific information required under Fed. R. Civ. P. 9(b).  LoanCare Br. at 26 (citing *Tran v. Metropolitan Life Ins., Co.*, 408 F.3d 130, 140-41 (3d Cir. 2005)).  To the extent that the Mr. Binder is alleging the defendants engaged in fraud, the defendants are correct that the pleadings must satisfy the standards of Rule 9(b).  *Seldon v. Home Loan Servs., Inc.*, 647 F. Supp. 2d 451, 470 n.11 (E.D. Pa. 2009) ("Of course, to the extent plaintiffs allege a violation of the catchall provision on the basis of fraudulent conduct, plaintiffs must plead the elements of common law fraud and Rule 9(b)'s particularity requirement does apply.") (*citing Christopher v. First Mut. Corp.*, No. 05-01149, 2006 WL 166566, at *6 (E.D. Pa. Jan. 20, 2006) and *Cheatle v. Katz*, No. 02–4405, 2003 WL 21250583, at *8 (E.D. Pa. Apr. 1, 2003)); *Birchall v. Countrywide Home Loans, Inc*., No. 08-2447, 2009 WL 3822201, at *8 (E.D. Pa. Nov. 12, 2009).

In order to meet the Rule 9(b) standard, a plaintiff must "plead (1) a specific false representation of material fact; (2) knowledge by the person who made it of its falsity; (3) ignorance of its falsity by the person to whom it was made; (4) the intention that it should be acted upon; and (5) that the plaintiff acted upon it to his damage." *U.S. ex rel. Budike v. PECO Energy*, 897 F. Supp. 2d 300, 316 (E.D. Pa. 2012) (citing *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 284 (3d Cir.1992)). "Rule 9(b) requires, at a minimum, that plaintiffs support their allegations of fraud with all of the essential background that would accompany the first paragraph of any newspaper story, that is, the who, what, when, where and how of the events at issue." *Incubadora Mexicana, SA de CV v. Zoetis, Inc.*, 310 F.R.D. 166, 177 (E.D. Pa. 2015) (citing *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)).

Applying this standard, the Court finds that Mr. Binder has specifically claimed a number of false representations of material facts, namely the misrepresentations in account statements from 2012 to 2015. Am. Compl at ¶ 128.  Additionally, these statements were included in

30

account statements and intended by the defendants to be acted upon by Mr. Binder, and Mr. Binder has alleged that he did, in fact, remit higher than required payments as a result of these misrepresentations. *See* Am. Compl. at 131. Similarly, he alleges that the defendants improperly force-placed insurance, resulting in Mr. Binder being charged higher insurance premiums.

In making these allegations, Mr. Binder has tied himself in a rhetorical knot—his attempt to circumstantially establish the defendants' knowledge of the falsity of their statements necessarily acknowledges his own concurrent knowledge of their falsity. Even if the Court were to find that the pleadings sufficiently allege that the misstatements on Mr. Binder's account statements were made with the defendants' knowledge, the pleadings clearly state Mr. Binder was aware of the mistakes on his account statements and indeed contested the accuracy of these statements regularly after September 2012. "The Supreme Court of Pennsylvania has consistently interpreted the Consumer Protection Law's private-plaintiff standing provision's causation requirement to demand a showing of justifiable reliance, not simply a causal connection between the misrepresentation and the harm." *Hunt v. U.S. Tobacco Co.*, 538 F.3d 217, 222 (3d Cir. 2008), *as amended* (Nov. 6, 2008); *accord Schwartz v. Rockey*, 593 Pa. 536, 557, 932 A.2d 885, 898 (2007) ("The UTPCPL clearly requires, in a private action, that a plaintiff suffer an ascertainable loss *as a result* of the defendant's prohibited action. This means, in this case, a plaintiff must allege reliance.") (emphasis in original) (citing *Weinberg v. Sun Co.*, 565 Pa. 612, 618, 777 A.2d 442, 446 (2001)). Mr. Binder affirmatively states that he did *not* rely on the statements made by the defendants and ultimately made his payments in spite of his belief that the statements were inaccurate. *See* Am. Comp. ¶ 66 ("Binder made this overpayment out of an abundance of caution to ensure a timely and full payment for the payment due October 1,

31

2012.").   Ultimately, the Court finds that Mr. Binder has failed to state a claim for fraudulent

conduct under UTPCPL.

As Mr. Binder points out, however, the statute not only prohibits fraud, but deceptive

conduct as well, and both parties acknowledge that the pleading requirements when alleging

deceptive, as opposed to fraudulent conduct, are somewhat relaxed.   *See In re K-Dur Antitrust*

*Litig.*, 338 F. Supp. 2d 517, 548 (D.N.J. 2004). "The Pennsylvania Supreme Court has instructed

that courts construe the statute liberally [to affect] its object of preventing unfair or deceptive

practices." *Seldon*, 647 F. Supp. 2d at 465 (citing *Creamer v. Monumental Properties Inc.*, 459

Pa. 450, 329 A.2d 812, 817 (1974).

> To state a claim for "deceptive conduct" under the UTPCPL, a plaintiff must
> satisfy three elements: First, a plaintiff must allege facts showing a deceptive
> act, that is conduct that is likely to deceive a consumer acting reasonably under
> similar circumstances. Next, the plaintiff must allege justifiable reliance, in
> other words that he justifiably bought the product in the first place (or engaged
> in some other detrimental activity) because of the defendants'
> misrepresentation or deceptive conduct. Finally, the plaintiff must allege that
> this justifiable reliance caused ascertainable loss.

*Montanez v. HSBC Mortgage Corp. (USA)*, 876 F. Supp. 2d 504, 519 (E.D. Pa. 2012) (citing

*Seldon*, 647 F. Supp. 2d at 470).

The pleadings allege that the defendants engaged in conduct which was likely to deceive

a consumer acting reasonably under the circumstances—namely by making errors in compiling

Mr. Binder's account statement and failing to correct errors once identified.   The result of this

alleged conduct was that the defendants misrepresented the amount owed by Mr. Binder on his

mortgage.   Under the circumstances, errors on Mr. Binder's account statement would likely

deceive a consumer as to the amount he owed on his mortgage.   Based upon the contents of the

Amended Complaint, Mr. Binder appears to have satisfied the first required element for pleading

deceptive conduct.

It is at the second and third elements of the tort, namely justifiable reliance and ascertainable loss, where Mr. Binder stumbles in the same manner as with regards to allegations of fraudulent conduct. Despite the more lenient pleading standard, Mr. Binder is still obligated to plead that he justifiably relied upon the alleged misrepresentations of the defendant. He does not, and for the same reasons identified above, his pleadings on such claims fail. Consequently, the Court grants the defendants' motion as to claims brought under the "catch-all" provision of the UPT

### B.  Notice of Right to Rescind

In addition to violations based upon fraudulent or deceptive conduct, Mr. Binder also alleges that the defendants violated 73 Pa. C.S. § 201-7 by failing to provide him with a required Notice of Cancelation.

> Where goods or services having a sale price of twenty-five dollars ($25) or more are sold or contracted to be sold to a buyer, as a result of, or in connection with, a contact with or call on the buyer or resident at his residence either in person or by telephone, that consumer may avoid the contract or sale by notifying, in writing, the seller within three full business days following the day on which the contract or sale was made and by returning or holding available for return to the seller, in its original condition, any merchandise received under the contract or sale.

*Id*. at § 201-79(a). At the time of the contract, the buyer shall be provided with a notice of cancelation form which substantially informs the buyer that he or she may cancel the transaction without any penalty or obligation, within three business days from the date of the contract. *Id*. at § 201-7(b)(2).

The statute specifically requires that the relevant good must be contracted or sold "as a result of, or in connection with, a contact with or call on the buyer or resident at his residence."

> [I]n interpreting § 201–7, we must recognize that the breadth of its wording is meant to prevent the use of devices to circumvent its underlying intention to provide protection in a broad range of "door-to-door" sales. It is not meant to open up every transaction in which a seller of goods or services has any sort of contact at all with the buyer at his residence to the scope of § 201–7.

*In re Lewis*, 290 B.R. 541, 554 (Bankr. E.D. Pa. 2003)(citing *Saler v. Hurvitz*, 84 B.R. 45 (Bankr. E.D. Pa. 1988)); *see also Lou Botti Construction v. Harbula*k, 760 A.2d 896, 898 (Pa. Super. 2000).  The Amended Complaint here includes no allegation that the mortgage contract was the result of a call or visit to Mr. Binder's residence by any of the defendants. Despite the conclusory pleadings identified in his response to the motion to dismiss, Mr. Binder's conclusory allegations that the defendants were required to provide notice under § 201-7(b)(2) are insufficient to state a claim.

### C. *Per Se* Violations

The Amended Complaint also alleges that the defendants' violations of RESPA, TILA, the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq*., ("FDCPA") FDCPA and the Pennsylvania Fair Credit Extension Uniformity Act, 73 Pa. Stat. Ann. § 2270.4 ("FCEUA") each constitute *per se* violations of UTPCPL.  Am. Compl. ¶ 132.  Following oral argument on the motion to dismiss, Mr. Binder stipulated to dismiss any alleged *per se* violation of UTPCPL under RESPA, TILA and FDCPA, but maintained that he has stated a claim for a *per se* violation of UTPCPL under FCEUA.

"[P]er se violations of the UTPCPL should be expressly provided for in the underlying statute."  *Abrams v. Toyota Motor Credit Corp.*, No. CONTROL 071049, 2001 WL 1807357, at *8 (Pa. Com. Pl. Dec. 5, 2001).  The FCEUA, however, does expressly provide that a violation of that statute constitutes a *per se* violation of the UTPCPL:

> If a debt collector or creditor engages in an unfair or deceptive debt collection act or practice under this act, it shall constitute a violation of the act of December 17, 1968 (P.L. 1224, No. 387), known as the Unfair Trade Practices and Consumer Protection Law.

73 Pa. Stat. Ann. § 2270.5 (West).

As discussed under "Count X Fair Credit Extension Uniformity Act," *infra*, however, Mr. Binder has failed to state a claim for violation of the FCEUA.  Consequently, he has not pleaded a *per se* violation of the UTPCPL.

## Count IV Breach of Contract

Mr. Binder's fourth claim alleges breach of contract against all four defendants. LoanCare and Fannie Mae argue that neither is a party to the mortgage agreement at issue. LoanCare asserts that as a loan servicer and not a lender or note holder, it cannot be held liable for breaches of any mortgage obligation.  Similarly, Fannie Mae asserts that none of the allegations mention Fannie Mae specifically or allege that Fannie Mae breached a duty to Mr. Binder under the agreement.  Third, LoanCare and Fannie Mae argue that Mr. Binder has not pled any cognizable damages against them.

In addition to the arguments contained in the LoanCare/Fannie Mae Memo, WestStar argues that Mr. Binder has failed to state a claim for breach of contract based upon the defendants' alleged failure to make timely escrow payments.

### A.  LoanCare

LoanCare argues first that because it is only a servicer, it is not liable for breach of contract. "It is basic contract law that only a party to a contract can be liable for breach of that contract." *Comcast Spectacor L.P. v. Chubb & Son, Inc.*, No. 05-1507, 2006 WL 2302686, at *19 (E.D. Pa. Aug. 8, 2006) (citing *Electron Energy Corp. v. Short*, 408 Pa. Super. 563, 597 A.2d 175, 177 (Pa. Super. Ct. 1991)).

Mr. Binder responds that "LoanCare was the servicer of Binder's loan, and either was contractually obligated to Binder based on either contractual privity, agency principles, implied contract, or as a third party beneficiary or obligor."  As a preliminary matter, despite Mr. Binder's passing reference to LoanCare as an "obligor," he has not identified any part of the

Amended Complaint where he alleges that LoanCare was assigned any rights under the mortgage agreement.  In fact, the Amended Complaint does not plead any facts regarding the basis of LoanCare's lability under the Mortgage Agreement whatsoever—the reference to contractual privity, agency principles, implied contract, and such first appeared in the response to the motion, not in the Amended Complaint.  Taking all the facts in the Amended Complaint as true and drawing all reasonable inferences in Mr. Binder's favor, he still has provided the Court with no reason to conclude his general averments not tied to any specific allegations or cited to any authority, adequately state a claim.

Even if Mr. Binder had properly alleged the assignment of *some* obligations under the mortgage agreement, he would still need to specify what those obligations were that gave rise to liability here.  "As a servicer only receives limited rights and obligations under the mortgage contract relating to servicing, it is not a party to the original debt instruments like a lender or note holder, and, therefore, cannot be held liable for breaches in obligations that remain held by the lender or note holder."  *Trunzo v. Citi Mortgage*, 876 F. Supp. 2d 521, 533 (W.D. Pa. 2012), *on reargument in part,* 43 F. Supp. 3d 517 (W.D. Pa. 2014) (citing *Ruff v. America's Servicing Co.*, No. 07–0489, 2008 WL 1830182, at *4 (W.D. Pa. Apr. 23, 2008)).  Because Mr. Binder has not even attempted to plead *any* facts regarding the obligations to Mr. Binder that LoanCare had under the agreement, the Court finds that Mr. Binder has failed to state a claim for breach of contract against LoanCare.

### B.        Fannie Mae

The defendants next argue that Mr. Binder has failed to state a claim against Fannie Mae for breach of contract.  As with LoanCare, the defendants argue that Fannie Mae never had any contractual relationship with Binder and therefore cannot be liable for breach of the mortgage

agreement.[8]   The defendants acknowledge, however, that Fannie Mae purchased Mr. Binder's mortgage.   Consequently, Mr. Binder argues that Fannie Mae stepped into the shoes of WestStar and therefore is liable for any breach of the agreement.   *See* Am. Comp. ¶ 58 (citing Exhibit K ("Notification of Assignment Sale, or Transfer of Your Mortgage Loan")).

"An assignment is a transfer of property or some other right from one person to another, and unless in some way qualified, it extinguishes the assignor's right to performance by the obligor and transfers that right to the assignee." *Horbal v. Moxham Nat. Bank*, 548 Pa. 394, 406, 697 A.2d 577, 583 (Pa. 1997) (citing *In re Purman's Estate*, 358 Pa. 187, 56 A.2d 86 (Pa. 1948)).   The Amended Complaint alleges that WestStar's rights under the contract were transferred to Fannie Mae as of July 2012.   Once those rights were assigned, Fannie Mae would be liable for any subsequent breach of the contract by itself or its agents.   The correspondence sent by Fannie Mae to Mr. Binder, which is attached to the Amended Complaint at Exhibit K, holds out WestStar Mortgage, Inc., as a servicer with "authority to act on [Fannie Mae's] behalf with regards to the administration of [Mr. Binder's] mortgage loan and respond to any questions about [the] mortgage loan."   Holding the servicer out as possessing the authority to act on the principal's behalf would establish an agency relationship which would in turn bind the principal, in this case Fannie Mae, for the actions of its servicer acting within the scope of the conferred authority.   *See Wisler v. Manor Care of Lancaster PA, LLC*, 2015 PA Super 189, 124 A.3d 317, 324, *appeal denied*, 128 A.3d 222 (Pa. Super. 2015); *Washburn v. N. Health Facilities, Inc.*, 2015 PA Super 168, 121 A.3d 1008, 1012 (Pa. Super. 2015) ("Express authority exists where the principal deliberately and specifically grants authority to the agent as to certain matters."); *In re Estate of Brennen*, 839 A.2d 470, 473 (Pa. Commw. Ct. 2003) ("An agent's exercise of

---

[8]   The defendants' argument is presented without any actual analysis. Rather, they simply cite to the elements of a contract.   *See* LoanCare Br. at 30 (citing *Corestates Bank, N.A. v. Cutillo*, 723 A.2d 1053 (Pa. Super Ct. 1999).   Such a recitation provides no real help, given that the substance of the dispute as to Fannie Mae is not whether a mortgage existed or even if the terms were breached, but whether Fannie Mae had any responsibility to abide by the terms of the contract itself.

discretion binds the principal.").  Because Fannie Mae held out the servicer of the mortgage to act on its behalf, Mr. Binder has adequately pled a breach of contract claim against Fannie Mae.[9]

> **C.      Escrow Payments**

The WestStar/JG Wentworth defendants also argue that the breach of contact claims should be dismissed because Mr. Binder has not identified any contractual obligation which was breached by the alleged failure of the defendants to make timely payments. Mr. Binder responds by citing to both his Amended Complaint as well as the mortgage agreement, which he attached as Exhibit A to the Amended Complaint:

> 141. Also, Binder was required to pay additional amounts to an escrow account, to guarantee the payments of various taxes and insurances for the protection of the Home and Lender's security therein.  *See* Exhibit "A".
> 142. Pursuant to the agreements between Binder and Defendants, Defendants greed to maintain an escrow account for Binder's and their own benefit, and to make tax and insurance payments as required when due.
> 143. Defendants breached the agreements by failing to make these payments as required when due, resulting in Binder's insurance policies being canceled several times.
> 144. Defendants further breached the agreements by misapplying payments and misstating amounts paid and due on Binder's account and statements.
> 145. For example, misapplied principal payments, as seen in the difference between the remaining principal balance and the should be remaining principal balance. [sic]

Am. Compl. at ¶¶ 141-145.  Mr. Binder also cites to the Mortgage Agreement which sets out the obligations of both borrower and lender regarding the escrow payments, which notably require that "Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA."  Am. Comp. at Exhibit "A" at 4-5.

---

[9] The Court notes, however, that an individual acting as an agent for a disclosed principal is not personally liable on a contact between the principal and a third party unless the agent specifically agrees to assume liability. *Bennett v. A.T. Masterpiece Homes at Broadsprings, LLC*, 2012 PA Super 60, 40 A.3d 145, 150 (2012).  The Amended Complaint fails to plead that either LoanCare or WestStar (acting as servicer) agreed to assume liability under the agreement.

Based upon the above, the Court finds that Mr. Binder has adequately pled a breach of the mortgage agreement and, therefore, denies the WestStar/JG Wentworth motion to dismiss as to the escrow payments.

### D. Damages

The defendants make two arguments regarding damages.  First, the LoanCare/Fannie Mae defendants contend that Mr. Binder has failed to plead that he suffered any compensable damages as a result of a breach of the agreement.  As discussed above, the Amended Complaint alleges that the defendants breached the mortgage agreement by failing to apply the escrow payments properly.  *See* Am. Compl. at ¶¶ 141-145; *see also* ¶ 40.  As a consequence of the defendants' failure to manage the escrow account, Mr. Binder alleges that he was required to pay for "force-placed" insurance and spend time and money to ensure continued coverage.  Am. Compl. at ¶¶ 40-48.  "In order to recover for damages pursuant to a breach of contract, the plaintiff must show a causal connection between the breach and the loss."  *Logan v. Mirror Printing Co. of Altoona, Pa.*, 410 Pa. Super. 446, 448, 600 A.2d 225, 226 (Pa. Super. 1991).  Based upon the pleadings, the Court finds that Mr. Binder has adequately pled consequential damages resulting from the alleged breach.

In addition to the consequential damages, however, Mr. Binder alleges that he is entitled to punitive damages for the defendants' breach of the terms of the mortgage agreement.  "The law in Pennsylvania has always been that punitive damages cannot be recovered for breach of contract." *Smith v. Harleysville Ins. Co.*, 275 Pa. Super. 246, 248, 418 A.2d 705, 706 (1980), *aff'd,* 494 Pa. 515, 431 A.2d 974 (1981) (citing *Hoy v. Gronoble*, 34 Pa. 9 (Pa. 1859)); *Ash v. Cont'l Ins. Co.*, 593 Pa. 523, 529, 932 A.2d 877, 881 (2007) ("[U]nder Pennsylvania law, punitive damages are typically only awarded in tor actions.") (citing *Haugh v. Allstate Ins. Co.*, 322 F.3d 227, 235 (3d Cir. 2003)).  The single case cited by Mr. Binder does not contradict this.

*See Morilus v. Countrywide Home Loans, Inc.*, 651 F. Supp. 2d 292 (E.D. Pa. 2008).  In *Morilus*, the plaintiff's freestanding punitive damages claim was dismissed on summary judgment after the court found the plaintiffs had failed to establish liability for the underlying tort claims.  *Id.* at 310.  The opinion does not contradict the defendants' authority that punitive damages are not recoverable for breach of contract under Pennsylvania law.  Consequently, because there is no substantive dispute, the Court grants the defendants' motion as to punitive damages alleged in Count IV.

### Count V Breach of Fiduciary Duty

#### A.  Existence of a Duty

The defendants next argue that Count V should be dismissed in its entirety because, under Pennsylvania law, a mortgage lender does not owe any fiduciary duties to a borrower. The defendants rely principally on *Caplen v. Sec. Nat'l Servicing Corp.*, 514 F. Supp. 2d 746 (E.D. Pa. 2007), *aff'd sub nom. Caplen v. SN Servicing Corp.*, 343 F. App'x 833 (3d Cir. 2009). Here, on a motion for summary judgment, the court dismissed a borrower's breach of fiduciary duty claim against a mortgage lender, based upon the lender's alleged improper force-placement of insurance.  *Id.* at 752.  The court reasoned that "[t]here is no indication in the case law that a Pennsylvania court would find a fiduciary relationship between a mortgage lender and a homeowner-borrower."  *Id.*  Such a fiduciary relationship only occurs in relationships such as attorney and client, guardian and ward, or trustee and trust.  *Id.* (citing *Matter of Estate of Evasew*, 526 Pa. 98, 584 A.3d 910, 913 (Pa. 1990)).

Mr. Binder counters that the fiduciary duty here arises out of the special circumstance inherent in the lender acting as an escrow agent for funds held for the purpose of paying insurance premiums and other items in the borrower's mortgage.  *Laffan v. Santander Bank, N.A.*, No. 13-4040, 2014 WL 2693158 (E.D. Pa. June 12, 2014).  Unlike *Caplen*, where the

mortgage agreement simply gave the lender authority to purchase insurance to cover the collateral in the event the borrower failed to do so herself, the defendant in *Laffen* "pled that Defendants held funds in escrow for the purpose of paying insurance premiums and other items in the borrower's mortgages." *Id.* at *6. While *Laffen* analyzed the borrower/lender relationship under New Jersey law, in Pennsylvania, "[a]n ordinary escrow agreement creates a fiduciary relationship between the agent and the transferor." *Knoll v. Butler*, 675 A.2d 1308, 1312 (Pa. Commw. Ct. 1996), *aff'd*, 548 Pa. 18, 693 A.2d 198 (1997). Because Mr. Binder has pled that under the mortgage agreement the defendants agreed to maintain an escrow account for his benefit and to make certain payments when due, the Court finds that he has adequately pled the existence of a fiduciary relationship between himself and the mortgage lender.

This claim for breach of fiduciary duty, however, is pled as to all the defendants. With regards to the loan *servicers* Mr. Binder has failed to state a claim. The Amended Complaint does not contain any allegations which would establish a fiduciary relationship between Mr. Binder and the loan servicers. Much like mortgage lenders, loan servicers do not owe borrowers any specific fiduciary duties based upon their servicer/borrower relationship. *See Vann v. Aurora Loan Servs. LLC*, No. 10 -04736, 2011 WL 2181861, at *3 (N.D. Cal. June 3, 2011) ("Courts have similarly concluded that loan servicers do not owe a fiduciary duty to borrowers.") (citing *Moreno v. Citibank, N.A.*, No. 09–5339, 2010 WL 1038222, *3 (N.D. Cal. Mar.19, 2010)). As noted above, the Amended Complaint fails to plead an assignment of duties to the borrower under the mortgage agreement which could lead to the existence of a fiduciary relationship with the servicers. For this reason, the Court will grant the defendants' motion as to the loan servicers.

### B.  Gist of the Action Doctrine

41

The defendants also argue that Mr. Binder's breach of fiduciary duty claim is barred by the "gist of the action" doctrine. This doctrine, initially developed in England, and later imported into American common law, is intended to maintain the conceptual distinction between breach of contract claims and tort claims. *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 60-62 (Pa. 2014); *eToll, Inc., v. Elias/Savion Advertising, Inc.*, 2002 Pa. Super. 347, ¶ 14, 811 A.2d 10, 14 (Pa. Super. 2002). "[A]lthough mere non-performance of a contact does not constitute a fraud, it is possible that a breach of contract also gives rise to an actionable tort. To be construed as in tort, however, the wrong ascribed to defendant must be the gist of the action, the contract being collateral." *eToll, Inc.*, 2002 PA Super 347, ¶ 15, 811 A.2d at 14 (citing *Bash v. Bell Tel. Co. of Pennsylvania*, 411 Pa. Super. 347, 354, 601 A.2d 825, 829 (Pa. Super. 1992)).

The Supreme Court of Pennsylvania recently examined the gist of the action doctrine in the context of a motion to dismiss a negligence claim brought by insureds against insurer for representations made by insurer's agent regarding the harmfulness of certain mold discovered in insured's home. *See Bruno,* 106 A.2d at 50. After conducting a lengthy examination of both the jurisprudence of the Pennsylvania courts, as well as the English common law origins of the doctrine, the Pennsylvania Supreme Court explained that "the critical determinative factor in determining whether the claim is truly one in tort, or for breach of contract," for purposes of stating a claim, is "the nature of the duty alleged to have been breached." *Id.* at 68.

> [T]he substance of the allegations comprising a claim in a plaintiff's complaint are of paramount importance, and, thus, the mere labeling by the plaintiff of a claim as being in tort, e.g., for negligence, is not controlling. If the facts of a particular claim establish that the duty breached is one created by the parties by the terms of their contract—i.e., a specific promise to do something that a party would not ordinarily have been obligated to do but for the existence of the contract—then the claim is to be viewed as one for breach of contract. If, however, the facts establish that the claim involves the defendant's violation of a broader social duty owed to all individuals, which is imposed by the law of torts and, hence, exists regardless of the contract, then it must be regarded as a tort.

*Id.* (citations omitted); *accord Downs v. Andrews*, No. 15-1216, 2016 WL 519162, at *2 (3d Cir. Feb. 10, 2016) ("The District Court appropriately focused on the nature of the duty alleged to be breached, not merely on whether the contractual duties were sufficiently intertwined with the alleged torts."); *see also Certainteed Ceilings Corp.,* 2015 WL 410029 at *7 ("In the context of a single case, some allegations of breach of fiduciary duty may be barred by the gist of the action doctrine, while others may be deemed to be outside the scope of the contract at issue.") (citing *Brown & Brown*, 745 F. Supp. 2d at 619-20).

Mr. Binder does not dispute the substantive analysis set out by the Pennsylvania Supreme Court in *Bruno* but rather asserts that courts have declined to apply the gist of the action doctrine in instances where the alleged breached fiduciary duties were imposed as a matter social policy, independent of a contractual relationship.  *See* Pl. Resp. Br. at 41 (citing *Certainteed Ceilings Corp., v. Aiken*, No. 14-3925, 2015 WL 410029 (E.D. Pa. Jan 29, 2015)).  Notably, the single case cited by Mr. Binder for this principle actually finds in favor of a defendant seeking to dismiss a claim of breach of fiduciary duty under the gist of the action doctrine.  *See Certainteed Ceilings,* 2015 WL 410029 at *11 ("Given these alleged facts, Certainteed's claim for breach of fiduciary duty is nothing more than a restatement of its breach of contract claim.").  Moreover, the gist of the action doctrine involves a context-specific analysis and the fact that some courts have found that plaintiffs have adequately pled a breach of fiduciary duty, independent of an existing contractual relationship, does not preclude finding that Mr. Binder's claims are barred here.

Mr. Binder also argues that the Court should decline to dismiss his claims for breach of fiduciary duty because he is entitled to plead multiple claims as alternative theories of liability. While the Court has noted in the past that one "should be slow to dismiss claims under the gist of the action doctrine," *Orthovita, Inc. v. Erbe*, No. 07-2395, 2008 WL 423446, at *4 (E.D. Pa.

Feb. 14, 2008), this does not mean that the Court should or will ignore a plaintiff's attempt to repackage contract claim as a tort. Moreover, the gist of the action doctrine does not distinguish between alternative theories of liability but rather addresses whether, as a matter of law, the plaintiff is capable of pleading tort claims based upon conduct in the course of a contractual relationship. *See Bruno*, 106 A.3d at 64-65 ("*Horney* is notable for establishing that, as a matter of law, a negligence suit may not be brought for breaches of what are purely contractual duties. . . .") (*citing Horney v. Nixon*, 213 Pa. 20, 23, 61 A. 1088, 1089 (Pa. 1905)); *Certainteed Ceilings Corp.,* 2015 WL 410029 at *7.

Pennsylvania law requires examination of the specific duties alleged to determine whether the substance of the allegations themselves implies a contractual duty. It is apparent that the only fiduciary duty implicated by the pleadings in the amended complaint here relates to the obligations of the mortgage lenders to make premium payments for insurance on the property-collateral out of the funds paid into escrow. The amended complaint expressly alleges that "[p]ursuant to the agreements between Binder and Defendants, Defendants agreed to maintain an escrow account for Binder's and their own benefit, and to make tax and insurance payments as required when due." Am. Compl. at ¶ 142. Mr. Binder alleges that the defendants breached their fiduciary duties in two ways, first by "failing to make insurance payments when due from escrow accounts funding timely and properly by Binder." *See* Am. Compl. at ¶ 151. Second, Mr. Binder alleges that the Defendants further breached their fiduciary duties by "failing or refusing to respond to Binder's reasonable questions and requests for correction and/or explanation to [sic] information he received regarding his account." *See* Am. Compl. at ¶ 152.

Applying the gist of the action analysis, the Court concludes that both alleged breaches of fiduciary duty are simply restatements of Mr. Binder's breach of contract claims. As to the first, the duty to make payments as required by the terms of the contract is an obligation defined

exclusively by the terms of the contract—the plaintiff's allegations do not implicate a broader social duty owed to all individuals. To the extent that Mr. Binder alleges that the defendant mortgage lenders failed to make payments as set out in the contract, the Court finds that this is simply a restatement of the breach of contract claim and consequently barred by the gist of the action doctrine.   The second alleged breach of fiduciary duty presents a somewhat closer question.   The duty to respond to requests for information or to correct errors in Mr. Binder's accounts is not alleged to have been expressly set out in the four corners of the contract itself. Nevertheless, Mr. Binder has pled the obligation of defendants to maintain his account properly as falling under the duty of "good faith and fair dealing."[10]  *See Northview Motors* 227 F.3d 79, 91 (3d Cir. 2000) (duty of good faith and fair dealing is an "interpretive tool to determine the parties' justifiable expectations in the context of a breach of contract action.").   As set out clearly in the pleadings, the duty alleged by Mr. Binder originates with the contract and is therefore not an independent obligation.

### Count VI Breach of Covenants of Good Faith and Fair Dealing

The defendants challenged Count VI on the basis that this claim is not separate from a breach of contact claim and also, then, is barred by the gist of the action doctrine.   As the defendants point out in their briefing, "Pennsylvania law does not recognize a separate claim for breach of implied covenant of good faith and fair dealing" distinct from a breach of contract

---

[10] Originally, Mr. Binder pled separate claims for breach of contract and breach of the covenant of good faith and fair dealing.   As discussed *infra*, under Pennsylvania law, there is no cause of action for breach of a covenant of good faith and fair dealing independent of breach of contract. Following the oral argument, the plaintiff agreed to withdraw his separate count for breach of good faith and fair dealing.   He expressly stated however, that the allegations in that count were folded into the breach of contract claim against all defendants. Doc. No. 49; *see Wulf v. Bank of Am., N.A.*, 798 F. Supp. 2d 586, 588 (E.D. Pa. 2011) (Order).   In Count VI, Mr. Binder alleges that the "Defendants further breached the implied covenant of good faith and fair dealing by failing and refusing to respond to Binder's reasonable request and requests for correction and/or explanation to information he received regarding his account, including erroneous charges, balances and due dates." Am. Compl. at ¶ 158.   This allegation is substantively identical to the factual allegations regarding the alleged breach of fiduciary duty. *See* Am. Compl. at ¶ 152.

claim.  *See* LoanCare Br. at 32 (*citing Blue Mountain Mushroom Co. Inc., v. Monterey Mushroom, Inc.*, 246 F. Supp. 2d 394, 400-01 (E.D. Pa. 2002).

While Mr. Binder argued in his responsive briefing that he had alleged facts in his claim for breach of implied covenant of good faith and fair dealing which were distinct from his breach of contract claims, following oral argument he informed the Court that he was withdrawing his opposition and stipulating to the dismissal of Count VI as a claim separate from his breach of contract claim but requesting that the allegations contained in Count VI be "folded" into the breach of contract claim against all defendants.  Consequently, the Court grants the defendants' motion as to Count VI and will dismiss that Count with prejudice.

## Count VII Fraud/Fraudulent Misrepresentation

The defendants argue next that the Court should dismiss Mr. Binder's Count VII, which alleges fraud and fraudulent misrepresentation, for two separate reasons.  First, they assert that the claim must be dismissed under the gist of the action doctrine, but the Court need not address this argument because the defendants are correct with their second argument, namely that the plaintiff has failed to plead the fraud claim with the specificity required by Rule 9(b).

The plaintiff's allegations of fraud are deficient under Rule 9(b).  As to his fraud claims, Mr. Binder is obligated to "state with particularity the circumstances constituting fraud."  *See* Fed. R. Civ. P. 9(b).  "Where there are multiple defendants involved, the particular fraudulent acts allegedly committed by each defendant must be specified." *Dorsey v. Bioteque, Inc.*, No. 95-6085, 1996 WL 469255, at *1 (E.D. Pa. Aug. 14, 1996) (citing *Mayor of Rockaway v. Klockner & Klockner*, 811 F. Supp. 1039, 1060 (D.N.J. 1993)); *accord Sheehan v. Mellon Bank*, No. CIV. A. 95-2969, 1995 WL 549018, at *4 (E.D. Pa. Sept. 13, 1995) (dismissing without prejudice claim which "fails to specify which Defendants are accused of what fraudulent actions.").  Here, the complaint fails to allege which fraudulent acts were committed by which specific

defendants—rather Mr. Binder has claimed that the defendants are collectively responsible for all the fraudulent conduct alleged. This fails to satisfy the standard set out in the federal rules, and the Court will grant the defendants' motion and dismiss the count. Plaintiff will, however, be permitted to file an amended answer and attempt to address this deficiency.

As the Court finds that the plaintiff's pleadings are deficient, the Court does not reach the question of whether the gist of the action doctrine applies to the allegations of fraud as currently plead.

## Count VIII Negligence/Negligent Misrepresentation

With regards to Count VIII, the defendants again argue that the gist of the action doctrine precludes the plaintiff from pursuing a negligence claim. The defendants also argue that the negligence claim is precluded under the economic loss doctrine.

As discussed above, the gist of the action analysis requires analysis of "the nature of the duty alleged to have been breached." *Bruno,* 106 A.2d at 68. Here, the Amended Complaint identifies that duty as one to "maintain [the] account correctly, in accordance with the parties' agreements" and "to investigate and respond to [Mr. Binder's] questions and concerns thoroughly, accurately, and in a timely fashion." *See* Am. Compl. at ¶¶ 172-73. As pled, the plaintiff appears to have alleged that the duties at issue were specifically created by the existence of the mortgage agreement.

Had these been the only pleadings regarding negligence provided in the Amended Complaint, the Court may very well have found that the negligence count was defeated by the gist of the action doctrine alone. Mr. Binder has, however, also alleged that the defendants were negligent *per se* for their alleged violations of RESPA, TILA, FDCPA, and FCEUA.

> Negligence *per se* is conduct, whether of action or omission, which may be declared and treated as negligence without any argument or proof as to the particular surrounding circumstances. Pennsylvania recognizes that a violation of a statute or ordinance may serve as the basis for negligence *per se*. However, a

47

court will not use a statute or regulation as the basis of negligence per se where the purpose of the statute is to secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public.

*Mahan v. Am-Gard, Inc.*, 2003 Pa. Super 510, ¶ 23, 841 A.2d 1052, 1059 (2003) (citing *Wagner v. Anzon, Inc.*, 453 Pa. Super. 619, 684 A.2d 570, 574 (1996)).

The Pennsylvania courts have established four elements that need to be satisfied in order for a plaintiff to make out a claim of negligence *per se*. Notably, the second element requires that "the statute or regulation must clearly apply to the conduct of the defendant." *Mahan*, 2003 PA Super 510 at ¶ 23, 841 A.2d at 1059. Here, while the plaintiff has alleged liability collectively as to all defendants, based upon the above analysis—and given the fact that the Court finds that the plaintiff has failed to state a claim as to statutory claims against certain defendants—the Court finds that the pleadings as to this element of negligence *per se* are deficient. The claim is therefore dismissed. The plaintiff is granted leave to file an amended answer to include specific pleadings.

### Count IX Fair Debt Collection Practices Act

The defendants next argue that the Court should dismiss the plaintiff's claims brought under the FDCPA. The defendants contend that LoanCare and Fannie Mae were acting as mortgage lenders and servicers and that Mr. Binder has failed to plead that they were acting as debt collectors as defined under the statute. Mr. Binder responds that the statute does not categorically exclude mortgage lenders and servicers from liability under the statute and that his pleadings establish that the defendants were treating the mortgage as if it was in default at the time they acquired it. He claims that given that they were treating the loan as in default, they should be foreclosed from arguing they were not acting as debt collectors.

The purpose of the FDCPA is to "eliminate abusive debt collection practices by debt collectors." 15 U.S.C.A. § 1692 (West). The statute defines debt collectors as "any person who

uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). "Courts have held that mortgage lenders and mortgage servicing companies are not debt collectors when they attempt to collect their own debts." *New-Howard v. JP Morgan Chase Bank N.A.*, No. 11 -2855, 2013 WL 6096232, at *7 (E.D. Pa. Nov. 20, 2013)(collecting cases); *see* 15 U.S.C.A. § 1692a(6)(F) (excluding from the definition of debt collector "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity. . ." "concerns a debt which was not in default at the time it was obtained by such person.")

As a preliminary matter, it is undisputed that, at the time the mortgage was acquired by Fannie Mae, Mr. Binder was not in default. Rather, Mr. Binder argues that mortgage lenders and servicers have, in the past, been held liable under the statute when they mistakenly treated a loan as in default.

To support his allegation that a mortgage lender can be estopped from claiming that it is excluded from the statute when it mistakenly treats a mortgage as in default, plaintiff points to a single decision from the Seventh Circuit Court of Appeals, *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 535 (7th Cir. 2003). The court here considered whether the acquirer of a mortgage's mistaken belief as to the status of a mortgage had any relevance to determining whether that acquirer should be considered a creditor or a debt collector for purposes of the statute. *Id.* at 537. After analyzing the language of the statute, the court found that mistaken belief by the defendant was no defense to liability under the FDCPA. *Id.* at 538. The holding in *Schlosser*, however, is clearly distinguishable from the operative facts here. There, the mortgage in question was listed in the original lender's records as in default at the time it was acquired by

the defendant. *Id.* at 535.  Moreover, while the *Schlosser* mortgage was not, in fact, in default when it was acquired, the defendant nevertheless treated it as such by sending a demand letter to the plaintiff, explicitly identifying itself as a debt collector.  *Id.*  When the plaintiffs argued that the mortgage was not in error, the defendant nevertheless refused to accept the regular monthly payments and instituted foreclosure proceedings.  *Id.*

Conversely, the pleadings and the documents attached to the Amended Complaint here clearly show that the defendants were acting as mortgage lenders and not as debt collectors.  Mr. Binder has not alleged that WestStar, the original lender, ever considered the mortgage in default or that the defendants treated the mortgage in default at the time it was transferred.  Mr. Binder only provides conclusory assertions that the defendants were treating the mortgage as in default when it was acquired. *See* Am. Compl. at ¶ 180 ("By way of example only, and on information and belief, defendants have at various times—including when transferring ownership and/or servicing of the debt—treated the loan as being delinquent and or in default, including charging Binder late fees in multiple occasions.") "[T]he tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663.  The plaintiff has failed to plead that any of the defendants were principally engaged in the business of collecting debts, that they regularly engaged in the practice of collecting debts, or that they ever identified themselves as debt collectors.  Rather, the pleadings expressly state that LoanCare identified itself as a "loan servicer" when communicating to the plaintiff.  Am Compl at ¶ 56.  In fact, the entirety of the pled allegations regarding the nature of the defendants' business operations is consistent with the conclusion that these entities were principally engaged in mortgage lending and servicing.  *See* Am. Compl. at ¶¶ 11-14.

The Court, therefore, concludes that Mr. Binder has failed to allege that the defendants were acting as debt collectors for purposes of the statute. Therefore, he has failed to state a claim. As Mr. Binder's allegations affirmatively state that these defendants are not debt collectors for purposes of the statute, the Court finds that allowing the plaintiff to amend this claim would be futile. Consequently, the Court will grant the defendants' motion to dismiss Count IX with prejudice.

## Count X Fair Credit Extension Uniformity Act

Similar to the FDCPA, the Pennsylvania Fair Credit Extension Uniformity Act (FCEUA) prohibits "unfair methods of competition and unfair or deceptive acts or practices with regard to the collection of debts, including any violation of the FDCPA by a debt collector." *Glover v. F.D.I.C.*, 698 F.3d 139, 152 (3d Cir. 2012) (citing 73 Pa Stat Ann. §§ 2270.2, 2270.4(a) (West)). A debt collector under the FCEUA is defined as "[a] person not a creditor conducting business within this Commonwealth, acting on behalf of a creditor, engaging or aiding directly or indirectly in collecting a debt owed or alleged to be owed a creditor or assignee of a creditor." 73 Pa. Stat. Ann. § 2270.3. This definition, however, is narrower than that used in the FDCPA and therefore, "even where a defendant ostensibly falls within the FDCPA's definition of 'debt collector,' such defendant may not be liable under the FCEUA's narrower scope." *Id.*

For the same reasons outlined above, Mr. Binder has failed to allege the defendants were acting as debt collectors for purposes of the FCEUA. Consequently, the Court will grant the defendants' motion and dismiss Count X with prejudice.

**IV.** **CONCLUSION**

For the reasons outlined above, the Court will grant the defendants' two motions in part and deny the defendants' motions in part.

\* \* \*

An appropriate Order follows.

BY THE COURT:

s/Gene E.K. Pratter

GENE E.K. PRATTER
United States District Judge